FILED

2023 Jun-05  PM 02:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:20-cr-147-MHH-** |
| | } | **GMB** |
| **DENNIS DEWAYNE DOTHARD,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Dennis Dewayne Dothard is charged in this case with Hobbs Act Robbery under 18 U.S.C. § 1951(a) and with brandishing a firearm during that robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  On March 4, 2020, Mr. Dothard was arrested pursuant to a federal complaint for felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and he was indicted on the robbery and brandishing charges on May 28, 2020.  The complaint and the indictment pertain to an alleged incident at a Shell service station on January 13, 2020.  For the reasons discussed below, because Mr. Dothard has not been brought to trial on the robbery and brandishing charges yet, the Court must dismiss those charges.  Mr. Dothard has asked the Court to dismiss with prejudice; the United States has asked the Court to dismiss without prejudice.  This opinion resolves the pending motions to dismiss.

1

To resolve the motions, the Court first will discuss the procedural background of this case, including motions and orders that affected pre-indictment or post-indictment delays.  Next, the Court will consider Mr. Dothard's argument that the Court's failure to conclude a preliminary hearing before he was indicted warrants dismissal of the indictment.  Finally, the Court will consider the parties' arguments concerning post-indictment delays and determine the conditions for dismissal of the indictment in this case.

## I.

### *Pre-Indictment Proceedings*

In its March 4, 2020 complaint against Mr. Dothard, the United States alleged that on January 13, 2020, Mr. Dothard violated 18 U.S.C. § 922(g), a statute that criminalizes a felon's possession of a firearm.  (Case No. 2:20-mj-62-GMB, Doc. 1).[1]  The United States filed with the complaint an affidavit from a special agent from the Federal Bureau of Investigation.  In the affidavit, the special agent identified facts to support an application for a warrant for Mr. Dothard's arrest.  The agent asserted that that there was probable cause to believe that Mr. Dothard had violated 18 U.S.C. § 922(g) because through his investigation, the agent learned that:

---

[1] When a federal criminal proceeding begins with a complaint, the Clerk of Court randomly assigns the case to a magistrate judge and opens a magistrate judge – mj – matter.  When a grand jury returns an indictment against the defendant, the clerk randomly selects a district judge to add to the case, and the Clerk gives the case a criminal docket – cr – number.  The docket sheet entries in this case that precede the May 28, 2020 indictment concern magistrate judge proceedings and bear case number 2:20-mj-62-GMB.

5. . . . . on or about January 13, 2020, the Hoover Police Department responded to a silent robbery alarm at the Shell gas station located at 110 Riverchase Parkway East, Hoover, Alabama[.]

6. While Hoover Police Officers were in en-route to the Shell gas station, Hoover 911 dispatch received a call from the Shell gas station stating an unknown black male, wearing a white mask, robbed the Shell gas station at gunpoint.

7. Upon arrival at the Shell gas station, the responding Hoover Police Officer observed an unknown black male, exiting the bushes on the perimeter of the parking lot of the station. The unknown black male ran towards a maroon Jeep Grand Cherokee, bearing Alabama license plate number 8AJ2014, which was parked in the station's parking lot. The unknown black male appeared to be holding something white in his right hand. The responding Hoover Police Officer gave verbal commands to DOTHARD, who refused to comply with the verbal commands and entered the vehicle.

8. The Jeep Cherokee fled the scene of the gas station and turned east on Valleydale Road towards Interstate 65. The Hoover Police Officer notified dispatch of the fleeing Jeep Cherokee and dispatch sent the information to neighboring law enforcement agencies.

9. Jefferson County Sheriff's Deputies observed a maroon Jeep Cherokee, which matched the description given by the Hoover Police Department Dispatch, traveling northbound on Interstate 459. Jefferson County Deputies attempted to conduct a traffic stop on the Jeep Cherokee, but DOTHARD refused to stop and a pursuit ensued. At some point during the pursuit, Troopers from the Alabama Law Enforcement Agency joined the pursuit. Due to the high rate of speed by the Jeep Cherokee, which was during morning rush hour traffic, Jefferson County

Deputies called off the vehicle pursuit.

10. A short time later, Jefferson County Deputies came upon the Jeep Cherokee, which had crashed into the back of another vehicle. The occupant of the crashed vehicle observed an unknown black male subject exit the Jeep Cherokee and flee into the tree line around I-459 and I-20.

11. Law enforcement officers from the Jefferson County Sheriff's Office, Alabama Law Enforcement Agency and Leeds Police Department set up a perimeter around the wood line. DOTHARD was eventually located and arrested by responding law enforcement officers.

12. Upon arrest of DOTHARD, an inventory search of the Jeep Cherokee was conducted. Officers located two (2) black semi-automatic handguns: a Glock 23, .40 caliber, S/N: SDU459, and a Springfield XD, .45 caliber, S/N: S3235450.

13. According to witness statements, the Glock 23 semi-automatic handgun matched the description of the gun used during the robbery of the Shell gas station.

14. A review of court records reveal [*sic*] Dennis Dwayne DOTHARD was sentenced to a term of twenty (20) years imprisonment on 02/21/2014, for Robbery, First degree, a felony.[2]

(Case No. 2:20-mj-62-GMB, Doc. 1, pp. 3-5).

Finding that probable cause existed to arrest Mr. Dothard, the magistrate judge signed the complaint and issued an arrest warrant for Mr. Dothard for the felon in possession of a firearm charge. (Case No. 2:20-mj-62-GMB, Doc. 1, p. 1 and March

---

[2] The spelling of Mr. Dothard's middle name in the indictment in this case is "Dewayne."

4, 2020 docket entry).  On March 4, 2020, law enforcement arrested Mr. Dothard, and he appeared before the magistrate judge.  At that hearing, the magistrate judge appointed the Federal Public Defender's Office to represent Mr. Dothard and ordered Mr. Dothard temporarily detained pending a preliminary hearing and a detention hearing, both set for March 9, 2020.  (Case No. 2:20-mj-62-GMB, March 4, 2020 minute entry and Doc. 2; *see also* Docs. 4, 5).

During a March 9, 2020 telephone conference, at the request of Mr. Dothard's attorneys, the magistrate judge continued the preliminary and detention hearing. (Case No. 2:20-mj-62-GMB, Doc. 6).  On March 17, 2020, during another telephone conference, the magistrate judge received updates from Mr. Dothard's attorney and indicated that the preliminary hearing would be reset.  (Case No. 2:20-mj-62-GMB, March 17, 2020 minute entry).[3]

Also on March 17, 2020, the Chief Judge of the United States District Court for the Northern District of Alabama entered a general order that began "In re: COURT OPERATIONS DURING THE PUBLIC HEALTH EMERGENCY CAUSED BY THE COVID-19 VIRUS."  The Chief Judge ordered:

> 1. <u>Jury proceedings</u>: All civil and criminal jury trials, and  any  other  proceeding  that  requires  jurors

---

[3] The magistrate judge's orders from March 2020 do not indicate why Mr. Dothard's attorney requested continuances of Mr. Dothard's preliminary hearing.  During an April 2023 hearing on the pending motions to dismiss the indictment, Mr. Dothard's attorney from the Federal Public Defender's Office explained that he was evaluating Mr. Dothard's competence and needed time to gather additional information regarding Mr. Dothard's mental health.  (April 18, 2023 docket entry).  A transcript of the April 2023 hearing is available upon request.

(grand or petit), are hereby **continued** pending further court order.

- Grand Jury Indictment Period: The above order applies to grand juries. Because jurors will not be available to empanel during the pendency of this General Order, the 30-day time period for filing an indictment is tolled as to each defendant until this order terminates. *See* 18 U.S.C. § 316l(b). In the event that a grand jury was empaneled before the date of this Order and that previously-empaneled grand jury is able to gather to take testimony and deliberate, such proceedings and their results shall be deemed valid and not in violation of this Order.

- Speedy Trial Act: The Court notes that, due to the growing number of persons in this district who have tested positive for COVID-19, the possibility of gathering an adequate spectrum of jurors could be difficult and could expose more persons to the virus. The Court thus finds that the ends of justice are served by continuing all criminal jury trials to protect the public, and that these public health concerns outweigh the best interests of the public and any defendant's right to a speedy trial. Therefore, the time period resulting from the continuances created by this General Order will be excluded under the Speedy Trial Act, 18 U.S.C. § 316l(h)(7)(A). Individual judges presiding over criminal proceedings may take such actions consistent with this General Order as may be lawful and appropriate to ensure the fairness of the proceedings and preserve the rights of the parties, particularly where

defendants are detained pending trial. This includes, but is not limited to, continuing all trial-specific deadlines in criminal proceedings.

- Exceptions: If a criminal defendant seeks an exception to this order to exercise his/her speedy trial right, the defendant shall file a motion for an exception with the District Judge assigned to the case. The District Judge retains the discretion to grant the requested exception in exigent circumstances.

ALND General Order, March 17, 2020 (bold in the General Order). With respect to other criminal proceedings, the Chief Judge ordered:

3. Other in-court criminal proceedings: Despite the terms of this Order, the individual judges assigned to a criminal case retain the ability to conduct all other criminal proceedings, including but not limited to, initial appearances, preliminary hearings, detention hearings, the acceptance of guilty pleas, and sentencing. The Court remains mindful of the balance between Defendants' constitutional rights and the present Public Health Emergency and will thus utilize telephone and/or video technology to conduct its proceedings when it is feasible. Before the Court will conduct a guilty plea or supervised release violation hearing, it will first discuss the matter with the attorneys involved in the case to ascertain any concerns they have.

ALND General Order, March 17, 2020, p. 2.[4]

---

[4] A copy of the March 17, 2020 "General Order" can be found at https://www.alnd.uscourts.gov under the "Local Rules and Orders" tab.

Per the March 17, 2020 General Order and by agreement of the parties, on March 19, 2020, the magistrate judge set a preliminary hearing by videoconference for March 23, 2020. During that videoconference, Mr. Dothard's attorney moved to continue the preliminary hearing; Mr. Dothard remained in custody. The magistrate judge granted the motion and ordered Mr. Dothard to "notify the courtroom deputy when [Mr. Dothard was] ready to proceed with the preliminary hearing." (Case No. 2:20-mj-62-GMB, March 23, 2020 minute entry, Doc. 9).

On April 21, 2020, Mr. Dothard's attorney notified the magistrate judge that Mr. Dothard was prepared to proceed with the preliminary hearing. The magistrate judge set the preliminary hearing by videoconference for April 27, 2020. (Case No. 2:20-mj-62-GMB, Doc. 10). On April 24, 2020, Mr. Dothard's attorney filed a motion to continue the preliminary hearing, citing "concerns about Mr. Dothard's mental health." (Case No. 2:20-mj-62-GMB, Doc. 11). The magistrate judge granted the motion, continued the preliminary hearing, and ordered Mr. Dothard's attorney to notify the courtroom deputy "when [Mr. Dothard was] ready to proceed with the preliminary hearing." (Case No. 2:20-mj-62-GMB, Doc. 12).

### *The Indictment*

On May 28, 2020, a grand jury returned a two-count indictment against Mr. Dothard, charging him with Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a) and brandishing a firearm in relation to that robbery in violation of 18 U.S.C. §

924(c)(1)(A)(ii).  (Doc. 1).  The charges pertain to the January 13, 2020 incident at the Shell gas station that the FBI special agent described in his affidavit in support of the criminal complaint against Mr. Dothard.  (Doc. 1; *see* pp. 3-4 above).

### *Post-Indictment Proceedings*

On June 5, 2020, the magistrate judge appointed the Federal Public Defender's Office to represent Mr. Dothard on the charges in the indictment against him and set the case for arraignment on June 11, 2020.  (Docs. 2, 3).  The magistrate judge re-set the arraignment for June 16, 2020 but then cancelled the June 16, 2020 arraignment.  (Docs. 4, 8, 13).

On June 17, 2020, the Chief Judge of the Northern District of Alabama entered General Order No. 2020-09, terminating the March 17, 2020 General Order prohibiting jury trials and grand jury proceedings.  In the June 2020 order, the Chief Judge instructed district judges and magistrate judges to "individually determine when it is appropriate to conduct such proceedings on a case by case basis" and to "be mindful of the health and safety of all participants in any such proceeding." ALND General Order No. 2020-09, June 17, 2020.[5]

On August 18, 2020, Mr. Dothard's attorney filed an unopposed motion to extend scheduling deadlines pursuant to 18 U.S.C. § 3161(h)(1)(A) and (h)(7)(A),

---

[5] A copy of the June 17, 2020 General Order No. 2020-09 is available at https://www.alnd.uscourts.gov under the "Local Rules and Orders" tab.

citing "concerns about M[r]. Dothard's ability to assist in his defense because of his mental state" and issues caused by the COVID-19 pandemic. (Doc. 15). Mr. Dothard's attorney explained that Mr. Dothard had a history of mental illness; that Mr. Dothard had requested psychiatric treatment from a hospital in November 2019, shortly before the incident described in the indictment; and that the pandemic had hindered efforts to evaluate Mr. Dothard's ability "to proceed to arraignment and participate in his defense." (Doc. 15, pp. 1-2). Mr. Dothard's attorney asserted that he needed more time to meet his obligation to "prepare the constitutionally-required adequate defense or intelligently advise Mr. Dothard on a potential plea bargain" and that an extension would meet the ends of justice. (Doc. 15, pp. 2-3). Mr. Dothard's attorney requested an extension of at least 90 days. (Doc. 15, p. 3).

After examining Mr. Dothard's motion, the magistrate judge explained that because the Court had not yet entered a scheduling order, there were no deadlines to extend. The magistrate judge construed Mr. Dothard's motion as a "request to exclude certain time from the computation of the Speedy Trial Act." (Doc. 18, p. 1).[6] In his order granting the motion, the magistrate judge stated:

> According to the motion, the defendant requires additional time to address mental health and competency issues that have arisen during the course of this case. The requested time will allow the defendant

---

[6] The magistrate judge explained that he had not arraigned Mr. Dothard or entered a scheduling order because Mr. Dothard's attorney had raised issues concerning Mr. Dothard's competency. (Doc. 18, p. 1).

and his counsel an adequate opportunity to explore whether there are mental health issues impacting his competency and will prevent the miscarriage of justice that would result if the court subjects the defendant to proceedings he is not competent to understand. As a result, the court finds that the ends of justice served by granting a continuance outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7).

(Doc. 18, pp. 1-2).   The magistrate judge excluded from the computation of the Speedy Trial deadline the time between August 19, 2020 and November 30, 2020. (Doc. 18, p. 2).

On December 7, 2020, the magistrate judge set Mr. Dothard's arraignment for December 10, 2020 by videoconference but later converted the arraignment to an in-person hearing and re-set it for December 15, 2020.  (Docs. 19, 20, 21).  During the arraignment, Mr. Dothard waived the reading of the indictment and entered a plea of not guilty.  The government asked that Mr. Dothard remain in custody, and Mr. Dothard waived his right to a detention hearing.  (Dec. 15, 2020 minute entry, Doc. 22).  The magistrate judge found that Mr. Dothard had "knowingly, intentionally, and voluntarily waived his right to a detention hearing" and ordered him detained "pending resolution" of this case.  (Doc. 22).

On January 12, 2021, the Court set a telephone conference for January 13, 2021, and entered an order on January 13, 2021 continuing the trial date until April 19, 2021.  As grounds for the continuance, the Court found that "the ends of justice

served by continuing the trial date due to [] surges in COVID-19 cases and the pandemic's impact upon criminal jury trials outweigh[ed] the best interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)."  (Doc. 26, p. 1).

A few months later, Mr. Dothard filed a *pro se* motion on March 15, 2021 to disqualify his attorney and to appoint new counsel.  In his motion, Mr. Dothard asserted that Mr. Watson had been ineffective as his attorney because Mr. Watson did not file motions for "defects in prosecution," "defects in the institution of the prosecution," "defects in the pleadings," or for discovery.  (Doc. 29, pp. 2-3).  On March 17, 2021, Mr. Watson filed a motion in which he asked the Court to relieve him and the Federal Public Defender's Office as counsel of record for Mr. Dothard. Mr. Watson asserted that "the attorney/client relationship [was] irreparably damaged" because of Mr. Dothard's claims of ineffective assistance of counsel. (Doc. 30).

The Court held an in-person hearing on these motions on March 22, 2021. Based on the information provided in that hearing, the Court found that reasonable cause existed to believe that Mr. Dothard might "be suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings or to assist in his defense."  (Doc. 32, p. 1).  On March 26, 2021, the Court ordered Mr. Dothard to undergo a psychiatric evaluation to determine whether he was competent to proceed to trial.  (Doc. 32).  In that order, the Court found:

> The time for the examination and for disposition of this matter is excludable time under the Speedy Trial Act (18 U.S.C. §§ 3161(h)(1)(A) and 3161(h)(7)(A)) in that such delay is necessary to assure Mr. Dothard can understand the nature and consequences of the proceedings against him and assist properly in his defense. Any delay will be in the best interest of Mr. Dothard and the public.

(Doc. 32, p. 3).[7]

On August 15, 2021, while the parties and the Court were waiting for the results of Mr. Dothard's psychiatric evaluation, he submitted a *pro se* motion in which he argued that the 84-day delay between his arrest and indictment violated the Speedy Trial Act. (Doc. 35, p. 2).[8] Then on August 18, 2021, Mr. Dothard submitted a "Pro se Motion to Dismiss for Violation of Brady Law / Prosecutorial Misconduct / Conspiracy against rights / Probable Cause 'Gerstein Hearing.'" (Doc. 36). In that motion, Mr. Dothard argued that Mr. Watson requested continuances of the preliminary hearing on the government's complaint without his knowledge or consent. (Doc. 36, pp. 2-4). On August 25, 2021, the Court held that it could not "consider Mr. Dothard's *pro se* motions because he ha[d] attorneys who [could] file

---

[7] While Mr. Dothard was awaiting his assessment at a BOP facility, his attorney subpoenaed records to assist the BOP in its assessment. (Sealed Doc. 33). The Court also received a motion for a protective order from the agency from which Mr. Dothard's attorney subpoenaed records. (Doc. 39). The BOP assessment was delayed because of the pandemic's impacts on transportation and placement.

[8] Applying the prison mailbox rule, the Court deems Mr. Dothard's *pro se* motion filed the date he signed his motion and presumably delivered it to prison officials. *See Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

motions on his behalf." (Doc. 37). The Court directed Mr. Dothard's attorney to provide him a copy of the order. (Doc. 37).

On September 24, 2021, the Court received a copy of the forensic evaluation report Dr. Lisa B. Feldman prepared regarding her examination of Mr. Dothard. (Sealed Doc. 40-1). The parties stipulated that the Court could "make findings regarding Mr. Dothard's competency based upon the submitted report." (Doc. 43, p. 1). On December 22, 2021, based on the forensic report and the parties' stipulation, the Court found pursuant to 18 U.S.C. § 4241(d) that "the defendant is not presently competent to proceed [to trial] and that a period of competency restoration treatment is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." (Doc. 44, pp. 1-2). Pursuant to 18 U.S.C. §§ 4241(d)-(e), the Court ordered that Mr. Dothard be "committed to the custody of the Attorney General for hospitalization in a suitable facility for a reasonable period not to exceed four months from the date of admission for treatment to restore [Mr. Dothard] to a state of mental capacity such that the criminal proceedings against him may proceed." (Doc. 44, p. 2).

That commitment began on July 12, 2022 and was scheduled to conclude on November 8, 2022. (Sealed Doc. 45). On November 28, 2022, the Court received a psychiatric report in which the examining psychiatrist indicated that Mr. Dothard

had been restored to competency. (Sealed Doc. 46). On December 12, 2022, the magistrate judge ordered the United States Marshal to begin the process to return Mr. Dothard to the Northern District of Alabama for further proceedings. (Doc. 48).

Because of Mr. Dothard's mental health issues, Mr. Dothard's motion to disqualify counsel and Mr. Watson and the FPD's motion to be relieved from representing Mr. Dothard remained pending. (Docs. 29, 30). The magistrate judge addressed those motions when Mr. Dothard returned to the district. On February 7, 2023, the magistrate judge held a hearing on those motions with Mr. Dothard present, granted both motions, and appointed Kenneth Gomany to represent Mr. Dothard. (Doc. 52).

On February 26, 2023, the parties jointly stipulated that they had no objections to the psychiatric report opining that Mr. Dothard had been restored to competency. (Doc. 56). The parties agreed to submit the issue of Mr. Dothard's competency to the Court based on that report and waived an evidentiary hearing on the matter. (Doc. 56). Based on the psychiatric report and the parties' stipulation, on March 1, 2023, the magistrate judge found that Mr. Dothard "has a rational and factual understanding of the charges and proceedings against him, and that he is able to rationally communicate with and assist counsel in his own defense." (Doc. 57, p. 5). Based on that finding and without evidence to the contrary, the magistrate judge

held that Mr. Dothard was competent to participate in all proceedings relating to the charges against him and to stand trial.  (Doc. 57, p. 5).

On March 13, 2023, Mr. Dothard's new attorney filed a motion to dismiss the indictment with prejudice, arguing that pre-indictment and post-indictment delays in Mr. Dothard's case violated the Speedy Trial Act, the Fifth Amendment's Due Process Clause, and the Sixth Amendment right to a speedy trial.  (Doc. 59).  Mr. Dothard also argued that he did not receive a preliminary hearing on the charge in the federal complaint within 14 days in violation of Fed. R. Crim. P. 5.1.  (Doc. 59).

The Court held a telephone conference regarding Mr. Dothard's motion on March 15, 2023.[9]  During the conference, Mr. Dothard's attorney asserted that the delay in Mr. Dothard's case had prejudiced him because there were video cameras at the Shell station where the robbery allegedly occurred, but the Shell station had been demolished, causing the loss of potentially exculpatory evidence.  The AUSA indicated that the United States might move to dismiss the indictment without prejudice and might present the case to another grand jury.  Consistent with that conversation, on March 23, 2023, the government moved to dismiss the indictment without prejudice.  In its motion, the government provided no grounds for dismissal. (Doc. 61).

_____

[9] A transcript of the conference is available upon request.

In his response to the government's motion, Mr. Dothard argues that the Court should dismiss the indictment in this case with prejudice because he has "suffered depression [and] anxiety awaiting [the] outcome of his case." (Doc. 62, p. 3). Mr. Dothard also argues that because the "Shell gas station allegedly robbed by Dothard has been demolished since the offense occurred," his attorney no longer may "view the scene and examine the premises for surveillance camera positions or lack thereof, etc." (Doc. 62, p. 3). Mr. Dothard argues that these "factors demonstrate extreme prejudice" because any "exculpatory evidence could be now lost." (Doc. 62, p. 3). He also argues that the "delay of more tha[n] three years is presumptively-prejudicial" and that he "need not specifically demonstrate prejudice to prevail [on] his claim." (Doc. 62, pp. 3-4).

On April 18, 2023, the Court held a hearing on both motions to dismiss the indictment; Mr. Dothard attended the hearing as did his original attorney, Mr. Watson.[10] Mr. Watson testified regarding the events surrounding his requests for continuances in the case. At the hearing, Mr. Dothard's attorney and the AUSA indicated that they had not calculated the date on which the speedy trial clock expired. The government contends that the clock began to run on May 28, 2020 when Mr. Dothard was indicted and that more than 70 days had passed from May

_____

[10] A transcript of the hearing is available upon request.

17

28, 2020 until "Mr. Watson filed his motion to extend deadlines" on August 18, 2020.

The AUSA indicated that the Court could regard the government's motion to dismiss the indictment without prejudice as an indication that the government was not opposed to dismissal of the case.  In deciding whether to dismiss with or without prejudice, the government urged the Court to consider that the charged offenses of robbery and brandishing a firearm during the robbery are serious offenses that could warrant a substantial period of imprisonment.  The government also argued that because Mr. Dothard has several prior robbery offenses, he could face an increased custodial sentence as an armed career criminal.  The AUSA argued that the government did not contribute to the delays in this case and that most of the delays concerned efforts on Mr. Dothard's behalf to assess his mental health and competency to stand trial.  Finally, the AUSA pointed out that the government had no control over the closure of the Shell gas station, that the government was at the same disadvantage as Mr. Dothard because the station was demolished, and the government had provided in discovery video surveillance footage of the alleged crime.

Mr. Dothard argued that he did not consent to motions to continue or to waiver of a preliminary hearing.  Mr. Dothard's attorney pointed out that 84 days elapsed between the filing of the complaint and the indictment and that Mr. Dothard did not

receive a preliminary hearing on the complaint.  Mr. Dothard's attorney reiterated his previous arguments concerning prejudice.

Against this backdrop, the Court turns to the law that governs the parties' motions to dismiss.

## II.

### *Preliminary Hearing*

Mr. Dothard urges the Court to dismiss the indictment in this case with prejudice because he did not receive a preliminary hearing on the federal complaint against him.  Mr. Dothard contends that he did not consent to continuing his preliminary hearing, and he did not waive the requirement for a hearing.  (Doc. 59).

Analysis of Mr. Dothard's argument concerning a preliminary hearing begins with Rule 5.1 of the Federal Rules of Criminal Procedure.  Pursuant to Rule 5.1(c), "the magistrate judge must hold the preliminary hearing within a reasonable time, but no later than 14 days after the initial appearance if the defendant is in custody . . . ."  Fed. R. Crim. P. 5.1(c).  Rule 5.1(d) authorizes a magistrate judge to continue a preliminary hearing "one or more times" with the defendant's consent and for good cause.  Fed. R. Crim. P. 5.1(d).  "If the defendant does not consent, the magistrate judge may extend the time limits only upon a showing that extraordinary circumstances exist and justice requires the delay."  Fed. R. Crim. P. 5.1(d).  Here, Mr. Dothard first appeared before a magistrate judge on March 4, 2020.  (March 4,

2020 minute entry for initial appearance).  By March 18, 2023, he had not had a preliminary hearing, but the delay in this case was proper under Rule 5.1.

The magistrate judge began a preliminary hearing by videoconference on March 23, 2020 but suspended it.  (Doc. 9).  Between Mr. Dothard's initial appearance and the March 23, 2020 hearing, the magistrate judge set a preliminary hearing on March 9, 2020.  The magistrate judge continued that hearing generally at the request of Mr. Dothard's attorney.  (Doc. 6).  On March 9, the magistrate judge set a telephone conference for March 17.  (Doc. 6).  During the March 17 telephone conference, counsel discussed a preliminary hearing with the magistrate judge, and the magistrate judge noted that he would schedule a preliminary hearing after he received "updates from counsel."  (March 17, 2020 minute entry).  During the March 23, 2020 video hearing, Mr. Dothard's attorney again moved to continue the preliminary hearing.  The magistrate judge granted the motion and ordered Mr. Dothard to "notify the courtroom deputy when [Mr. Dothard was] ready to proceed with the preliminary hearing."  (Case No. 2:20-mj-62-GMB, March 23, 2020 minute entry, Doc. 9).  After notifying the magistrate judge that Mr. Dothard was prepared to proceed with the preliminary hearing, on April 24, 2020, Mr. Dothard's attorney asked for another continuance, citing "concerns about Mr. Dothard's mental health." (Case No. 2:20-mj-62-GMB, Doc. 11).

Mr. Watson has explained that he requested continuances of the preliminary hearing settings because he was concerned about Mr. Dothard's competence. A preliminary hearing would have been futile if Mr. Dothard was not competent to participate. Mr. Watson's efforts to have Mr. Dothard evaluated were complicated by the onset of the COVID-19 pandemic. There is no evidence of undue delay; Mr. Dothard's attorney maintained frequent communication with the magistrate judge and with counsel for the United States so that the magistrate judge could attempt to complete a preliminary hearing as soon as possible. Doubts about Mr. Dothard's competency supply good cause for the continuances of the preliminary hearing.

Mr. Dothard argues he did not consent to the continuances that his attorney requested. There is no evidence in the record that Mr. Dothard objected to the continuances, and Mr. Dothard has filed *pro se* motions when he disagreed with his attorney's efforts on his behalf. Even if Mr. Dothard had objected, because of the questions concerning Mr. Dothard's competency, the Court would have relied on Mr. Dothard's attorney to guide decisions about Mr. Dothard's ability to participate in a hearing. Importantly, when BOP evaluated Mr. Dothard several months after the grand jury indicted him, BOP found that Mr. Dothard was not competent at the time to participate in this case. (Sealed Doc. 40). And when the grand jury indicted Mr. Dothard on May 28, 2020, Mr. Dothard no longer needed a preliminary hearing

on the federal complaint. Fed. R. Crim. P. 5.1(a) ("[A] magistrate judge must conduct a preliminary hearing unless: . . . the defendant is indicted.").

For these reasons, the Court denies Mr. Dothard's motion to dismiss the indictment because he did not receive a complete preliminary hearing.

### *Speedy Trial Act*

Mr. Dothard argues that pre- and post-indictment delays in this case violated the Speedy Trial Act. As for pre-indictment delays, under the Act, the government may not arrest a defendant on a federal criminal complaint and allow the defendant to remain in custody for an indefinite period before indicting him. *See* 18 U.S.C. §§ 3161(b) & 3162(a)(1). The Speedy Trial Act states:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. § 3161(b). If an indictment is not brought within 30 days as § 3161(b) requires, then the Court must dismiss "such charge against that individual contained in such complaint." 18 U.S.C. § 3162(a)(1). Mr. Dothard argues that the 84-day

gap between his arrest on March 4, 2020 and his indictment on May 28, 2020 violates § 3161(b) of the Speedy Trial Act.

Mr. Dothard's argument concerning pre-indictment delay fails because he has not accounted for excludable time under 18 U.S.C. § 3161(h).  Section 3161(h) provides that a court must exclude certain periods of delay "in computing the time within which an . . . indictment must be filed . . . ."  18 U.S.C. § 3161(h).  And § 3162(a)(1) provides that a court should consider the excludable delays in § 3161(h) in determining whether it must dismiss a charge against the defendant under § 3161(b).  *See* 18 U.S.C. § 3162(a)(1) (requiring dismissal of a charge in a complaint when "no indictment . . . is filed within the time limit required by section 3161(b) as extended by section 3161(h)").

Per § 3161(h)(7)(A), a court may suspend the 30-day pre-indictment clock when the "ends of justice" warrant delay.  Section 3161(h)(7)(A) provides that in computing the time within which an indictment must be filed, a district court must exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counselor or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the

> court sets forth, in the record of the case, either orally or
> in writing, its reasons for finding that the ends of justice
> served by the granting of such continuance outweigh the
> best interests of the public and the defendant in a speedy
> trial.

18 U.S.C. § 3161(h)(7)(A).  To make an "ends of justice" finding, a judge must consider, among other factors, whether "the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice," § 3161(h)(7)(B)(i), and whether an arrest occurred "at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b)," § 3161(h)(7)(B)(iv).

Here, two weeks after Mr. Dothard was arrested, by General Order, the Court excluded from the speedy trial calculation under § 3161(b) the time between March 17, 2020 and June 17, 2020 because of public health concerns prompted by the COVID-19 pandemic.  The General Order states that, because of the impact of the COVID-19 pandemic and the potential spread of the COVID-19 virus when persons congregate, "jurors [would] not be available to empanel" so that "the 30-day time period for filing an indictment" had to be tolled "as to each defendant" until the General Order expired.  ALND General Order, March 17, 2020, p. 1.  Because the General Order tolled the 30-day period for indictment until Mr. Dothard was indicted in this case on May 28, 2020, the 30-day period

did not expire before indictment, and there is no pre-indictment Speedy Trial Act violation under § 3161(b) in this case.

Mr. Dothard's argument fairs better with respect to post-indictment delays. The Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of the defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).  Section 3161(h) provides that certain periods of delay "shall be excluded . . . in computing the time within which the trial of any such offense must commence . . . ."  18 U.S.C. § 3161(h).  If a defendant is not brought to trial within 70 days as required by § 3161(c)(1), "as extended by section 3161(h), the . . . indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).

Here, Mr. Dothard's May 28, 2020 indictment provides the starting point for the 70-day speedy trial calculation under § 3161(c)(1) because Mr. Dothard was arrested, initially appeared before a magistrate judge, and was held in custody on the federal complaint before a grand jury indicted him.  (April 18, 2023 hearing); s*ee also United States v. Hernandez*, 724 F.2d 904, 905 (11th Cir. 1984) (explaining that when a defendant "is arrested prior to the indictment, and makes an initial appearance before a magistrate who orders him held to answer the charges in the

district court, the seventy-day pretrial period runs from the date of his indictment").
The 70-day clock did not begin running on May 28, 2020 because the COVID-19
General Order suspended the 70-day clock until that order expired on June 17, 2020.
The speedy trial clock began to run on June 18, 2020 and continued to run through
August 17, 2020.  The Court can find no statutory basis to toll any of this time.  As
of August 17, 2020, a total of 60 days had run on the 70-day speedy trial clock.

The speedy clock stopped on August 18, 2020 because Mr. Dothard's attorney
filed an unopposed motion to extend deadlines pursuant to § 3161(h)(1)(A) and
(h)(7)(A), to address concerns about Mr. Dothard's mental health.  On August 19,
2020, the magistrate judge entered an "ends of justice" order containing the required
statutory findings.  The magistrate judge excluded from the 70-day clock all time
between the filing of the motion on August 18, 2020 and November 30, 2020.  (Doc.
18).  The 70-day trial clock began to run again on December 1, 2020 and continued
to run through December 10, 2020 when the clock expired.  Because the trial clock
expired on December 10, 2020, and Mr. Dothard has not been tried yet on the
charges in the indictment, the Court must dismiss the indictment.

Under the Speedy Trial Act, a district court has discretion to dismiss an
indictment with or without prejudice.  *United States v. Ochoa*, 941 F.3d 1074, 1100
(11th Cir. 2019).  In exercising this discretion, a district court "shall consider, among
others, each of the following factors:  the seriousness of the offense; the facts and

circumstances that led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. § 3162(a)(2).

Mr. Dothard acknowledges that the offenses against him are serious.  (Doc. 62, p. 1).  The statutory maximum for a Hobbs Act Robbery conviction is 20 years imprisonment.  18 U.S.C. § 1951(a).  The mandatory minimum for brandishing a firearm in relation to that robbery is seven years imprisonment.  18 U.S.C. § 924(c)(1)(A)(ii).  These penalty provisions underscore the seriousness of the offenses.  *United States v. Knight*, 562 F.3d 1314, 1323 (11th Cir. 2009) ("The district court correctly determined that the statutory minimum sentence of ten years of imprisonment reflects the seriousness of Knight's offense.").  This seriousness of offense factor weighs in favor of dismissing the indictment in this case without prejudice.

So do the facts and circumstances surrounding the Speedy Trial Act violation. Shortly after the 70-day clock expired, on December 15, 2020, Mr. Dothard was arraigned on the indictment.  Just under one month later, because of a surge in COVID cases, the Court entered an "ends of justice" order and continued the trial until April 19, 2021.

In the interim, Mr. Dothard filed a *pro se* motion in which he asked the Court to appoint a new attorney to represent him.  His attorney also filed a motion to

withdraw.  (Docs. 29, 30).  Following a hearing on the motions on March 22, 2021, the Court ordered Mr. Dothard to submit to a psychiatric evaluation pursuant to 18 U.S.C. § 4241 to determine his competency to stand trial.  (March 22, 2021 minute entry; Doc. 32).  The pandemic delayed Mr. Dothard's evaluation as did Mr. Dothard's attorney's attempt to obtain state records to assist in the evaluation.  (Doc. 33, 34).  Following the evaluation, Mr. Dothard was committed to the custody of the Attorney General for hospitalization for restoration for up to four months.  (Doc. 44).  Again, because of delays created by the pandemic, Mr. Dothard did not reach a treatment facility until July 2022.  (Sealed Doc. 45).  Mr. Dothard was restored to competency, and on December 12, 2022, the magistrate judge ordered the U.S. Marshal to begin the process of returning Mr. Dothard to this district.  (Doc. 48).

When Mr. Dothard returned to this district, the magistrate judge addressed Mr. Dothard's motion for appointment of new counsel and Mr. Dothard's attorney's motion to withdraw.  On February 7, 2023, the magistrate judge appointed a CJA attorney to represent Mr. Dothard.  (Doc. 52).  On February 26, 2023, counsel for the parties stipulated to Mr. Dothard's competency to stand trial.  (Doc. 56).  Two weeks later, Mr. Dothard moved to dismiss the indictment.  (Doc. 59).

These proceedings demonstrate that the government was not responsible for the delays that led to the violation of the speedy trial clock.  The COVID-19 pandemic caused significant delays in Mr. Dothard's mental health evaluation and

restoration.  Had it not been for those delays, his case would have been ready for trial much sooner.  Trial was not an option until Mr. Dothard's mental health could be evaluated and addressed.  Because the delays in this case were beyond the parties' control, the circumstances leading to dismissal do not warrant dismissal with prejudice.[11]

With respect to the administration of justice, Mr. Dothard has suffered some prejudice because of the speedy trial violation.  Mr. Dothard asserts that he "has been very depressed, anxious, worried, [and] concerned" during his prolonged custody on these charges.  (Doc. 62, p. 3; *see also* April 18, 2023 hearing).  The Court does not discount these feelings, but they are not adequate to require dismissal with prejudice without more.  Mr. Dothard points out that his attorney cannot return to the scene of the alleged robbery at the Shell gas station because the station has been demolished, but the demolition affects Mr. Dothard and the government equally; neither has access to the scene of the alleged crime to prepare the case for trial.  *See United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (finding in the Sixth Amendment right to a jury trial context that delay can be a "two-edged sword" because the

---

[11] To be sure, counsel for the United States should have monitored the trial clock and asked the Court to make an ends-of-justice finding before the clock expired.  Such a finding would have been appropriate given continued efforts to have Mr. Dothard assessed and treated so that the government could pursue the charges against him.  The Court recognizes that the COVID-19 General Order made monitoring the trial clock more challenging than usual.  The Court is not aware of evidence that suggests that the United States understood that the clock had expired and remained silent.

government bears the burden to prove criminal charges against a defendant beyond a reasonable doubt).  Mr. Dothard recognizes that the government has produced video surveillance evidence from the Shell gas station.  This evidence mitigates prejudice caused by Mr. Dothard's inability to visit the gas station.  Therefore, though the administration of justice factor is most helpful to Mr. Dothard, the factor is not sufficiently compelling to warrant dismissal with prejudice.

Having considered the three factors in § 3162(a)(2), the Court dismisses the indictment in this case without prejudice.

### Constitutional Grounds

Mr. Dothard argues that the delays in his case rise to the level of constitutional violations, jeopardizing his Fifth Amendment right to due process and his Sixth Amendment right to a speedy trial.  The Fifth Amendment Due Process Clause applies to Mr. Dothard's allegations regarding pre-indictment delays, and the Sixth Amendment governs post-indictment delays.  *See United States v. Solomon*, 686 F.2d 863, 871 (11th Cir. 1982) ("The yardstick for measuring the constitutionality of pre-indictment delays is the due process clause, not the speedy trial clause, which governs delays after indictment.").

### Fifth Amendment

Under certain circumstances, pre-indictment delays can raise due process concerns.  *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011).

Because the statute of limitations curbs government delay in bringing criminal charges, the "'Due Process Clause has a limited role to play' in protecting against the prejudice of pre-indictment delays." *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) (quoting *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). To establish that a pre-indictment delay violated his due process rights, a defendant must show deliberate prosecutorial delay in bringing of the indictment "to gain a tactical advantage" and actual prejudice that "impairs the fairness of the defendant's trial." *United States v. Keel*, 254 Fed. Appx. 759, 760 (11th Cir. 2007) (citing *United States v. Solomon*, 686 F.2d 863, 871 (11th Cir. 1982)).  The defendant's burden to prove both deliberate delay and actual prejudice is an "exceedingly high one." *Butler*, 792 F.2d at 1533 (internal quotations omitted).

As the Court has discussed, the pandemic created the unusual gap between Mr. Dothard's  arrest and his indictment.  Nothing in the record suggests a strategic effort on the government's part to delay Mr. Dothard's indictment to gain a tactical advantage.  The 82-day pre-indictment delay had everything to do with the COVID restrictions in the Court's March 2020 General Order and nothing to do with government strategy.  Therefore, Mr. Dothard's Fifth Amendment argument fails.

### Sixth Amendment

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]"  U.S.

Const. Amend. VI.  Unlike the Speedy Trial Act's "strict mathematical analysis," the Sixth Amendment's mandate for speedy criminal trials calls for an examination of "the particular circumstances of each case using a balancing test which weighs the conduct of both the government and the defendant."  *Unites States v. Spaulding*, 322 Fed. Appx. 942, 945 (11th Cir. 2009) (per curiam) (unpublished).

A district court must weigh four factors in deciding whether a post-indictment delay violates the Sixth Amendment right to a speedy trial:  "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) actual prejudice to the defendant."  *United States v. Stapleton*, 39 F.4th 1320, 1327 (11th Cir. 2022) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  A district court must state "how heavily each factor weighs against the identifying party."  *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006).  If the first three factors "'weigh heavily against' the Government, the defendant need not show actual prejudice, the fourth factor."  *United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018) (quoting *Ingram*, 446 F.3d at 1336).  After weighing these factors, a district court must dismiss the indictment with prejudice if it finds a violation of the constitutional right to a speedy trial.  *See Strunk v. United States*, 412 U.S. 434, 439 (1973) (finding that the only remedy for a constitutional speedy trial violation is dismissal of the indictment with prejudice, which "means that a defendant who

may be guilty of a serious crime will go free, without having been tried") (internal quotations omitted).

The length of delay factor is a "triggering function: it must first be satisfied for the court to analyze the other factors." *Oliva*, 909 F.3d at 1298. "If a defendant proves the length of the delay is sufficient to trigger the *Barker* analysis, however, that does not necessarily mean that factor weighs heavily against the Government: the two inquiries are separate." *Oliva*, 909 F.3d at 1298 (citing *Barker v. Wingo*, 407 U.S. 514 (1972)).

Here, almost three years have elapsed since Mr. Dothard was indicted on May 28, 2020. A post-indictment delay "exceeding one year is generally sufficient to trigger the analysis" of the other Sixth Amendment factors. *Oliva*, 909 F.3d at 1298. Therefore, the Court will consider all four *Barker* factors, including the nature of the delay. "[T]he length of delay doesn't weigh *heavily* against the Government unless the *reason* for the delay also weighs against the Government." *United States v. Stapleton*, 39 F.4th 1320, 1327 (11th Cir. 2022) (emphasis in *Stapleton*). "Different reasons for delay are accorded different weights." *Oliva*, 909 F.3d at 1301. "Bad faith reasons—like 'an intentional attempt to delay trial in order to hinder the defense'—weigh heavily against the Government, whereas a valid excuse . . . 'justifies the delay.'" *Stapleton*, 39 F.4th at 1327 (quoting *Oliva*, 909 F.3d at 1301). As discussed, the record shows that the government is not responsible for the delays

in this case.  The Court recognizes the unusual delay precipitated by the pandemic and regrets the impact that it had on efforts to address Mr. Dothard's mental health needs, but the length of the delay and the cause of the delay do not weigh heavily against the government in this case.[12]

As to the timeliness of Mr. Dothard's assertion of his right to a speedy trial, the Eleventh Circuit has held that a defendant bears "some responsibility to assert a speedy trial claim," and the failure to do so is weighed heavily against the defendant. *United States v. Carruthers*, 458 Fed. Appx. 811, 817 (11th Cir. 2012) (citing *United States v. Twitty,* 107 F.3d 1482, 1490 (11th Cir. 1997)).

On August 20, 2021, while he was represented by counsel, Mr. Dothard filed a *pro se* motion concerning pre-indictment delays that Mr. Dothard believed violated the Speedy Trial Act.  (Doc. 35, p. 2).  That motion came more than one year after Mr. Dothard's indictment and did not address post-indictment delays in his case. Mr. Dothard's attorneys did not raise a speedy trial argument until March 13, 2023. (Doc. 59).   Delay in raising speedy trial issues is understandable given the undercurrent of the pandemic and the time occupied in addressing Mr. Dothard's

---

[12] Mr. Dothard asks the Court to consider the pre-indictment delays when evaluating this factor. (Doc. 62, p. 3).  But "[p]re-indictment delay is accounted for [in this factor] only if it is "inordinate."  *Oliva*, 909 F.3d at 1304 (internal quotations and citations omitted).  The 84-day delay between Mr. Dothard's arrest and indictment was not unusually excessive, especially given the impact of the COVID-19 pandemic.

mental competency issues, but none of Mr. Dothard's attorneys raised a speedy trial issue until Mr. Dothard's mental health treatment was complete, and he was returned to this district for trial.  This factor is not helpful to Mr. Dothard.

With respect to prejudice, a district court must consider "the three interests of the defendant the speedy trial right was intended to protect:  (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired."  *U.S. v. Villarreal*, 613 F.3d 1344, 1355 (11th Cir. 2010) (internal quotations omitted).  Of these three interests, "the most serious is the last, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system."  *Villarreal*, 613 F.3d at 1355.

Mr. Dothard argues that he is "presumptively prejudiced" because of the extended delay in bringing him to trial, (Doc. 59, p. 2; Doc. 62, pp. 3-4), but lengthy delay in bringing a defendant to trial "does not per se prejudice the accused's ability to defend himself" because the burden of proof remains with the government, *Barker*, 407 U.S. at 521.  Lengthy delays that affect the ability of the government to present witnesses and evidence to meet its burden can "work to the accused's advantage."  *Barker*, 407 U.S. at 521.  So, Mr. Dothard must show actual prejudice resulting from the delay and not just the delay itself.  The Court is "mindful that the

passage of time makes it more difficult to demonstrate actual prejudice with complete precision." *Villarreal*, 613 F.3d at 1356.

With respect to pretrial incarceration, Mr. Dothard's detention, though lengthy, has not been oppressive because much of the time has been devoted to assessment and treatment of his mental health concerns. The Court does not minimize Mr. Dothard's contention that the delay in his case has caused him depression, anxiety, worry, and concern, but other factors likely have contributed to Mr. Dothard's anxiety, worry, and concern such as the health concerns caused by the pandemic and Mr. Dothard's pre-existing mental health conditions.

Regarding Mr. Dothard's ability to prepare his defense, as discussed, the demolition of the Shell gas station where the alleged robbery purportedly occurred causes some prejudice, but the prejudice impacts both parties, and Mr. Dothard has not demonstrated that he cannot prepare an adequate defense because his attorney cannot visit the Shell gas station. Mr. Dothard has video surveillance evidence from the Shell gas station that the government provided during discovery. That evidence likely fills many of the gaps created by the demolition of the gas station. Mr. Dothard's conclusory assertion that he may have difficulty finding or interviewing witnesses from the gas station does not establish actual prejudice; witnesses may be available even if the gas station is not. *See United States v. Hayes*, 40 F.3d 362, 366

(11th Cir. 1994) ("conclusory assertions of prejudice . . . are insufficient to constitute proof of actual prejudice").

Thus, weighed together, the four *Barker* factors do not weigh heavily against the government in this case. Therefore, Mr. Dothard has not demonstrated a Sixth Amendment speedy trial violation that warrants dismissal of the indictment with prejudice.

## CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part Mr. Dothard's motion to dismiss the indictment. (Doc. 59). The Court denies Mr. Dothard's motion as to the lack of a preliminary hearing, pre-indictment delay under § 3161(b) of the Speedy Trial Act and the Fifth Amendment Due Process Clause, and post-indictment delay under the Sixth Amendment right to a speedy trial. The Court grants Mr. Dothard's motion to dismiss the indictment as to post-indictment delay under § 3161(c)(1) of the Speedy Trial Act and dismisses the indictment without prejudice.

Because the Court grants Mr. Dothard's motion to dismiss, the government's later-filed motion to dismiss the indictment is moot. (Doc. 61). The Court asks the Clerk of Court to please TERM Docs. 59 and 61 and close the case.

**DONE** and **ORDERED** this June 5, 2023.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE